UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAE HAN SHEET CO., LTD.,

                        Plaintiff,

                -against-

EASTMAN CHEMICAL CORP.,
COMMONWEALTH LAMINATING AND
COATING, INC., JOHN DOES & ABC
COMPANIES 1 THROUGH 20,

                        Defendants.

**OPINION AND ORDER**

17 Civ. 2734 (ER)

Ramos, D.J.:

Sae Han Sheet Co., Ltd. ("Plaintiff") brings this action against Eastman Chemical Corp.[1] ("Eastman"), Commonwealth Laminating and Coating, Inc. ("Commonwealth," together, the "Named Defendants"), John Does 1 through 20, and ABC Companies 1 through 20 concerning defective "Suntek" products. Before this Court is the Named Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or alternatively, to transfer venue pursuant to 28 U.S.C. § 1406(a).

For the following reasons, the Named Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED.

---

[1] The Named Defendants argue that the entity's correct name is Eastman Chemical Company. Doc. 16 at 1 & n.1. Indeed, Plaintiff submits invoices which lists the entity as Eastman Chemical Company or Eastman Chemical Co., not Eastman Chemical Corp. *See e.g.* Doc. 19 Ex. 2 at 1, 3. Courts generally grant leave to correct mislabeling under Rule 15(c). *See Edwards v. City of New York*, No. 14 Civ. 10058 (KBF), 2015 WL 5052637, at *7 (S.D.N.Y. Aug. 27, 2015). However, since Plaintiff did not seek leave to correct the entity name, and the Court grants dismissal of the instant action for lack of personal jurisdiction, it need not reach this issue.

I. **BACKGROUND**[2]

Plaintiff is a company with its principal place of business in Seoul, South Korea. Compl. ¶ 1. Eastman is a Delaware corporation with its headquarters in Kingsport, Tennessee. *Id.* at ¶ 2. It employs approximately 15,000 individuals worldwide, has more than 50 manufacturing locations and several sales offices around the globe, and has customers in more than 100 countries. *Id.* at ¶ 3. Commonwealth was a Virginia corporation headquartered in Virginia. *Id.* at ¶ 4; Doc. 17 ("Williamson Decl.") ¶ 4. On December 14, 2014, Eastman acquired Commonwealth. Compl. ¶ 4. On February 1, 2016, Commonwealth was merged into CPFilms, Inc. ("CPFilms"), an indirect subsidiary of Eastman, and Commonwealth ceased to exist as a separate entity. Williamson Decl. ¶ 4. CPFilms is a Delaware corporation with its headquarters in St. Louis, Missouri. *Id.*

At all relevant times, Eastman was registered to do business in New York as well as 39 other states, while Commonwealth was never registered to do business in New York. Compl. at ¶ 2; Williamson Decl. ¶¶ 5, 8. CPFilms was registered to do business in New York from October 7, 2009 until June 29, 2016 when its registration was cancelled. Williamson Decl. ¶ 7.

Commonwealth manufactured "Suntek," a brand of glass tinting film commonly applied to automobiles and office windows to shade the sun, block UV rays, reduce heat and glare, enhance privacy and provide other such benefits. Compl. at ¶ 7. In 2008, Plaintiff and Commonwealth entered into an agreement granting Plaintiff exclusive rights to distribute Suntek products in South Korea. *Id.* at ¶ 8. On December 13, 2013, Commonwealth unilaterally

---

[2] The following facts are drawn from allegations contained in the Complaint (Doc. 1) that the Court accepts as true for purposes of the instant motion. *See Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 202 (2d Cir. 2014) (citations omitted). The Court can also consider the parties' accompanying submissions (Docs. 17, 19) in considering the Named Defendants' Rule 12(b)(2) motion. *See Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, No. 11 Civ. 420 (RJH), 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012) ("[A] court may consider documents beyond the pleadings in determining whether personal jurisdiction exists . . . .") (citation omitted).

terminated the exclusive agreement. *Id.* Thereafter, Plaintiff continued to purchase Suntek products for resale on a non-exclusive basis. *Id.* at ¶ 9.

Contemporaneously with Eastman's acquisition of Commonwealth in 2014, Eastman undertook a profitability review of Suntek. *Id.* at ¶ 10. As a result, in late 2014 or early 2015, Eastman decided to discontinue use of one of the three principal ingredients in the manufacturing process. *Id.* at ¶¶ 11-12. Plaintiff alleges that this change caused manufacturing defects that negatively impacted Plaintiff's distribution business. Specifically, in 2016, Plaintiff's customers began complaining of a "lunar-crater type of mold" on surfaces tinted with Suntek products. *Id.* at ¶ 15.

Plaintiff alleges that some or all of the defective products were sold by Eastman in St. Louis, Missouri and shipped from or through New York to Seoul, Korea. *Id.* at ¶ 5; Doc. 19-1 ("Kim Decl.") ¶¶ 21-23. The Named Defendants assert that title to the allegedly defective goods transferred to Plaintiff at its plant in Virginia where the products were manufactured. *See* Williamson Decl. Ex. A ¶ 6.

Eastman was allegedly aware of the defects since at least August 2016, but purportedly withheld this information from its customers. Compl. at ¶ 19. Moreover, when Plaintiff asked Eastman to replace the defective Suntek products, Eastman repeatedly urged Plaintiff to sign a general release as a condition for the replacement. *Id.* at ¶¶ 16-17. In October and November 2016, Eastman claimed to have shipped to Plaintiff "new, replacement products" that were "absolutely free of any defect," but these products were similarly deficient. *Id.* at ¶ 18.

By November 2016, a majority of Plaintiff's customers stopped purchasing any further Suntek products. *Id.* at ¶¶ 19, 26. In particular, one customer who was responsible for 40% of Plaintiff's sales volume immediately ceased doing business with Plaintiff when it learned that

3

Plaintiff had no remediation plan in place. *Id.* at ¶ 26.

Plaintiff filed the Complaint on April 15, 2017. Doc. 1. On July 5, 2017, the Named Defendants filed the instant motion to dismiss for lack of jurisdiction or, in the alternative, to transfer venue. Doc. 15.

## II. LEGAL STANDARD: RULE 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). Where no evidentiary hearing has been held, the plaintiff may meet the burden by pleading facts sufficient for a *prima facie* showing of jurisdiction. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *see also CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986). Pleadings and affidavits should be construed "in the light most favorable to plaintiffs, resolving all doubts in their favor." *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, No. 15 Civ. 00871 (SHS), 2017 WL 4250480, at *45 (S.D.N.Y. Sept. 25, 2017) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013)). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would lack the factual specificity necessary to confer jurisdiction." *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (internal quotation marks and citation omitted). As stated above, courts may rely on additional materials outside the pleading when ruling on 12(b)(2) motions. *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*,

No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n. 1 (S.D.N.Y. Feb. 5, 1992); *Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

## III. DISCUSSION

### A. Personal Jurisdiction

To determine whether a court has personal jurisdiction over a defendant, it must first determine whether the laws of the forum state permit exercise of jurisdiction. *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 102–03 (S.D.N.Y. 2015) (citing *Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 163 (2d Cir. 2010); *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 244 (2d Cir. 2007)). In New York, jurisdiction may be established over a defendant by general jurisdiction under New York Civil Practice Law and Rules ("CPLR") § 301, or specific jurisdiction under § 302. *See Delorenzo v. Ricketts & Assoc., Ltd.*, No. 15 Civ. 2506 (VSB), 2017 WL 4277177, at *6 (S.D.N.Y. Sept. 25, 2017). Courts must then determine whether the exercise of such personal jurisdiction comports with the requirements of due process. *Best Van Lines*, 490 F.3d at 244 ("The reach of New York's long-arm statute, by contrast, does not coincide with the limits of the Due Process Clause. Analysis under it therefore may involve two separate inquiries, one statutory and one constitutional").

#### 1. General Jurisdiction

CPLR § 301 confers general jurisdiction where a company "has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (internal quotations, modifications and citation omitted). However, a court's exercise of general jurisdiction over a foreign corporation only comports with the due process requirements of the Fourteenth Amendment if the corporation's "affiliations with the State . . .

render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). "[T]he general jurisdiction inquiry 'is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic,' but rather . . . 'whether that corporation's affiliations with the State are so continuous and systematic *as to render it essentially at home* in the forum.'" *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) ("*Daimler*")). A corporation is "essentially at home" in the state of incorporation and the state of its principal place of business. *Daimler*, 134 S. Ct. 760–61. Only in a "truly exceptional case" may "another jurisdiction . . . exercise such sweeping powers as the use of its adjudicatory authority to decide matters unrelated to its citizens or to affairs within its borders." *Brown*, 814 F.3d at 627 (internal quotation marks and citations omitted). Most recently, the Supreme Court again reiterated that "the paradigm forum for the exercise of general jurisdiction . . . for a corporation . . . [is where] the corporation is fairly regarded as at home." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear*, 564 U.S. at 924) (internal quotations omitted).

Eastman is not incorporated in New York, nor does it have its principal place of business in New York. Nonetheless, Plaintiff argues that the Court has general jurisdiction over Eastman because it consented to general jurisdiction when it registered to do business in New York, and has continuous and systematic affiliation with this forum. The Named Defendants argue that the "consent by registration" theory of general jurisdiction is no longer viable in light of *Daimler*, and that Eastman's activities in New York do not render it essentially at home in New York.[3]

---

[3] Plaintiff argues that the question of whether there is personal jurisdiction over Commonwealth is irrelevant as it merged with Eastman and thus do not present any arguments specific to Commonwealth.

6

#### a) Consent to Jurisdiction by Registration

Eastman registered with the New York Secretary of State to do business in New York under New York Business Corporation Law § 304. At the outset, the Court notes that neither § 304, nor any of the other potentially relevant New York Business Corporation Law provisions—§§ 305, 1301 and 1304—contain express language requiring consent to general jurisdiction. [4] *See Taormina v. Thrifty Car Rental*, No. 16 Civ. 3255 (VEC), 2016 WL 7392214, at *7 & n. 8 (S.D.N.Y. Dec. 21, 2016) (New York Business Corporation Law §§ 304, 305, 1301, 1304 "do not expressly require consent to general jurisdiction."). As explained below, the lack of such express language is fatal to Plaintiff's argument.

Although the Second Circuit never squarely addressed whether registering to do business in New York subjects a corporation to its general jurisdiction, in *Brown*, it addressed the

---

[4] Specifically, New York Business Corporation Law § 304 states the following:

> (a) The secretary of state shall be the agent of every domestic corporation and every authorized foreign corporation upon whom process against the corporation may be served.
>
> (b) No domestic or foreign corporation may be formed or authorized to do business in this state under this chapter unless in its certificate of incorporation or application for authority it designates the secretary of state as such agent.
>
> (c) Any designation by a domestic or a foreign corporation of the secretary of state as such agent, which designation is in effect on the effective date of this chapter, shall continue. Every domestic or foreign corporation, existing or authorized on the effective date of this chapter, which has not designated the secretary of state as such agent, shall be deemed to have done so. Any designation prior to the effective date of this chapter by a foreign corporation of an agent other than the secretary of state shall terminate on the effective date of this chapter.
>
> (d) Any designated post-office address to which the secretary of state shall mail a copy of process served upon him as agent of a domestic corporation or a foreign corporation, shall continue until the filing of a certificate under this chapter directing the mailing to a different post-office address.

N.Y. Bus. Corp. Law § 304

New York Business Corporation Law § 305 provides that a foreign corporation may designate another registered agent in New York in addition to the secretary of state; § 1301 provides that a foreign corporation can only do business in New York if it is authorized to do so under the article; and § 1304 provides that a foreign corporation may apply for authority to do business in New York by signing an application that includes the requisite company information. *See* N.Y. Bus. Corp. Law §§ 305, 1301 and 1304.

Connecticut business registration statute and held that registration and appointment of an in-state agent did not confer general jurisdiction. *Brown*, 814 F.3d at 640. Importantly, the Second Circuit stated that the "'essentially at home' test enunciated in *Goodyear* and *Daimler* . . . suggests that federal due process rights likely constrain an interpretation that transforms a run-of-the-mill registration . . . statute into a corporate 'consent' . . . to the exercise of general jurisdiction by state courts." *Id.* at 637. It further cautioned that "[i]f mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction—nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief." *Id.* at 640.

Plaintiff argues that *Brown* is not directly applicable to the instant action because it involved the Connecticut registration statute and not New York's. In addition, Plaintiff points out that the Second Circuit did not categorically rule that registration statutes can never establish general jurisdiction. *Id.* (noting that defendants "may . . . through . . . voluntary consent given (for example) in a commercial agreement" submit to jurisdiction, but expressly declining to decide "whether consent to general jurisdiction via a registration statute would be similarly effective notwithstanding *Daimler*'s strong admonition against the expansive exercise of general jurisdiction."). The Second Circuit also observed that, compared to the Connecticut registration statute, New York Business Corporation Law § 1301 has been "definitively construed" as more plainly advising the registrant that enrolling and transacting business in the state will vest local courts with general jurisdiction, and noted that "legislation has been introduced to ratify that construction of the statute." [5] *Id.* But the proposed amendment that sought to ratify that

---

[5] Although the Second Circuit did not specify the New York registration statute it was referring to, the only cite for this statement is a law review article that discusses § 1301. *Id.*; *see FrontPoint Asian Event Driven Fund, L.P. v.*

8

construction was not adopted.[6] The Second Circuit also broadly suggested in *dicta* that even if

corporations could consent by registration after *Daimler*, the registration statute must *expressly*

---

*Citibank, N.A.*, No. 16 Civ. 5263 (AKH), 2017 WL 3600425, at *4 (S.D.N.Y. Aug. 18, 2017) (noting that it appears that the Second Circuit was referring to New York Business Corporation Law § 1301 in *Brown*).
New York Business Corporation Law § 1301 states the following:

> (a) A foreign corporation shall not do business in this state until it has been authorized to do so as provided in this article. A foreign corporation may be authorized to do in this state any business which may be done lawfully in this state by a domestic corporation, to the extent that it is authorized to do such business in the jurisdiction of its incorporation, but no other business.
>
> (b) Without excluding other activities which may not constitute doing business in this state, a foreign corporation shall not be considered to be doing business in this state, for the purposes of this chapter, by reason of carrying on in this state any one or more of the following activities:
>
>> (1) Maintaining or defending any action or proceeding, whether judicial, administrative, arbitrative or otherwise, or effecting settlement thereof or the settlement of claims or disputes.
>>
>> (2) Holding meetings of its directors or its shareholders.
>>
>> (3) Maintaining bank accounts.
>>
>> (4) Maintaining offices or agencies only for the transfer, exchange and registration of its securities, or appointing and maintaining trustees or depositaries with relation to its securities.
>
> (c) The specification in paragraph (b) does not establish a standard for activities which may subject a foreign corporation to service of process under this chapter or any other statute of this state.
>
> (d) A foreign corporation whose corporate name is not acceptable for authorization pursuant to sections 301 and 302 of this chapter, may submit in its application for authority pursuant to section 1304 of this chapter, a fictitious name under which it shall do business in this state. A fictitious name submitted pursuant to this section shall be subject to the provisions of subparagraphs (2) through (9) of paragraph (a) of section 301 and 302 of this chapter. A foreign corporation authorized to do business in this state under a fictitious name pursuant to this section, shall use such fictitious name in all of its dealings with the secretary of state and in the conduct of its business in this state. The provisions of section one hundred thirty of the general business law shall not apply to any fictitious name filed by a foreign corporation pursuant to this section, and a filing under section one hundred thirty of the general business law shall not constitute the adoption of a fictitious name.

[6] The law review article that the Second Circuit relied on stated that, in 2014, the New York General Assembly proposed amending § 1301 to add that "[a] foreign corporation's application for authority to do business in this state, whenever filed, constitutes consent to the jurisdiction of the courts of this state for all actions against such corporation." *See* Tanya J. Monestier, *Registration Statutes, General Jurisdiction, and the Fallacy of Consent,* 36 Cardozo L.Rev. 1343, 1344 n. 2 (2015). This proposed amendment was not implemented. *See* N.Y. Bus. Corp. L. § 1301.

The New York General Assembly again proposed a similar amendment to § 1301 on May 4, 2017. NY S.B. 5889 (2017) (proposing to add that "[a] foreign corporation's application for authority to do business in this state, whenever filed, constitutes consent to the jurisdiction of the courts of this state for all actions against such

require such consent. *Id.* at 640-41. Specifically, the Second Circuit stated that "it *could* be concluded that a *carefully drawn* state statute that *expressly* required consent to general jurisdiction as a condition on a foreign corporation's doing business in the state, at least in cases brought by state residents, *might well be constitutional*." *Id.* at 641 (emphasis added).

In light of *Daimler* and the above pronouncements in *Brown*, the more recent authority in this district has held that corporations do not consent to general jurisdiction when they register under the various New York registration statutes. Notably, *Taormina*, relying on *Brown*, declined to conclude that registration and accompanying appointment of an in-state agent under New York Business Corporation Law §§ 304, 305, 1301 and 1304 confer general jurisdiction because the statutes do not expressly require consent to general jurisdiction. *Taormina*, 2016 WL 7392214, at *7 & n. 8; *see also Bonkowski v. HP Hood LLC*, No. 15 Civ. 4956 (RRM) (PK), 2016 WL 4536868, at *3 (E.D.N.Y. Aug. 30, 2016). Courts that examined other New York registration statutes similarly concluded that because the statutory language did not expressly require consent to general jurisdiction, jurisdiction based on registration could not be asserted. *See e.g. Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*, No. 17 Misc. 00216 (VEC), 2017 WL 3841874, at *5 (S.D.N.Y. Sept. 1, 2017) (registering to do business in New York under the International Banking Act of 1978 does not confer general jurisdiction); *FrontPoint Asian Event Driven Fund, L.P.*, 2017 WL 3600425, at *4 (registering to do business in New York under New York Banking Law § 200 does not confer general jurisdiction); *see also Famular v. Whirlpool Corp.*, No. 16 Civ. 944 (VB), 2017 WL 2470844, at *5 (S.D.N.Y. June 7, 2017) (citing *Chatwal Hotels & Resorts LLC*, 90 F. Supp. 3d at 105 ("After *Daimler*, with the Second Circuit cautioning against adopting 'an overly expansive view of general jurisdiction,' the mere fact of

---

corporation."). As of the writing of this opinion, the May 4, 2017 proposal has not been codified either. *See* N.Y. Bus. Corp. L. § 1301.

10

[defendant] being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation [n]or its principal place of business.")). Additionally, at least one recent New York Supreme Court case expressly rejected prior state court authority that recognized consent by registration due to *Daimler*. *Mischel v. Safe Haven Enters., LLC*, No. 653651/2016, 2017 N.Y. Misc. LEXIS 1402 at * 4 (N.Y. Sup. Ct. April 17, 2017). The state court stated that since "[a]ll 50 states require registration of foreign corporations to do business[,] . . . the net effect of finding jurisdiction by registration would be coercive" as it would force all corporations wishing to do business in the state to subject themselves to general jurisdiction. *Id.*

The Court agrees with *Taormina* and the weight of recent authority on this issue. The proposed amendment to § 1301 referenced in *Brown* was not adopted and thus, as discussed above, the New York registration statutes are not carefully drawn to expressly require consent to general jurisdiction. Accordingly, in the absence of such express statutory authority, the Court also declines to find that registering in New York subjects corporations to general jurisdiction here.

Plaintiff asks the Court to depart from the foregoing and rely instead on *Bailen v. Air & Liquid Sys. Corp.*, Index No. 190318/12, 2014 N.Y. Misc. LEXIS 3554 (N.Y. Sup. Ct. Aug. 5, 2014), which in turn solely relies on *Beach v. Citigroup Alternative Investments LLC*, No. 12 Civ. 7717 (PKC), 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014). Notwithstanding *Goodyear* and *Daimler*, *Beach* stated that "a corporation may consent to jurisdiction in New York under CPLR § 301 by registering as a foreign corporation and designating a local agent." *Beach*, 2014 WL 904650, at *6. The Court respectfully declines to follow *Bailen* and *Beach* because these opinions pre-date the Second Circuit's opinion in *Brown* and thus do not address its discussion regarding the limits of the consent by registration theory in light of *Daimler*. Moreover, the

foreign corporate defendant discussed in *Beach* was not subject to personal jurisdiction because, *inter alia*, it were not registered to do business in New York. *Id.* at *7, 22. Thus, any statements concerning the consent by registration theory discussed therein is *dicta*. Other recent cases in this district have expressly declined to follow *Bailen* and/or *Beach* as well. *See Famular*, 2017 WL 2470844, at *5 ("[T]he *dicta* in *Beach* relies on unpersuasive and potentially invalidated cases . . . [and the cases *Beach* relies on] fail to persuade the Court that the registration-by-consent theory is still valid, and the Court declines to follow the *dicta* in *Beach*"); *see also Taormina*, 2016 WL 7392214, at *6 (declining to follow *Bailen* and *Beach*).

Plaintiff also seeks to distinguish *Brown* by stating that, unlike in *Brown*, Eastman has prosecuted and defended cases in this district. Doc. 19 ("Pl.'s Opp.") at 10-11. This argument is unsupported and unpersuasive. Indeed, at least one court in this district has declined to impose general jurisdiction where the defendant had offices in New York, conducted business in New York, has a registered agent in New York, and has been the subject of many lawsuits in New York courts. *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 168 (S.D.N.Y. 2015).

Finally, Plaintiff asserts that *Daimler* does not apply to the instant action and that the consent by registration theory should be construed under the purview of *Burnham v. Superior Court of California, County of Marin*, 495 U.S. 604 (1990) instead. For this proposition, Plaintiff cites to *The Rockefeller University v. Ligand Pharmaceuticals*, 581 F. Supp. 2d 461, 467 (S.D.N.Y. 2008), which stated that where "jurisdiction is premised upon consent [by registration], it is doubtful that the minimum contacts test under the due process clause presents an impediment to the exercise of jurisdiction," and cited to *Burnham*. *Burnham* is inapposite. A plurality of the Supreme Court in *Burnham* actually held that a court has personal jurisdiction over an individual who was physically served process in the forum, even though the person's

presence was fleeting. 495 U.S. at 610-11, 619. The opinion did not mention the consent by registration theory, even in passing. In any event, the Second Circuit in *Brown* has already rejected the argument that *Daimler* does not have any bearing on whether mere registration to do business in a state subjects the corporation to general jurisdiction. *Brown*, 814 F.3d at 638-40.

The Court thus finds that Eastman did not consent to general jurisdiction in New York merely because it registered to do business here.

### b) Activities in New York

*Daimler* recognized that in an exceptional case, "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S. Ct. at 761 n.19. The inquiry of whether a corporation's operations in the forum qualify as exceptional involves "an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.* at 762 n. 20. *Daimler* provided only one example of such an exceptional case: *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437 (1952). *Id.* at 755-57 & n.8, 761 n.19. In *Perkins*, the defendant company was incorporated in the Philippines and operated gold and silver mines there, but due to the Japanese occupation during World War II, the company's president moved to Ohio in order to maintain the company's files and oversee its activities. *Id.* at 755-57 & n.8. *Daimler* noted that the Ohio court's exercise of general jurisdiction over the company was permissible because, in those unusual circumstances, Ohio became "a surrogate for the place of incorporation or head office." *Id.* at 756 n. 8 (citation omitted). Subsequent Second Circuit cases have held that this carve-out only applies in truly exceptional cases and that mere contacts with the forum, no matter how systematic and continuous, are "extraordinarily unlikely" to

13

qualify. *Brown*, 814 F.3d at 627; *see also In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 39-41 (2d Cir. 2014).

Plaintiff argues that this is an exceptional case because Suntek is sold throughout the United States, New York consumer and commercial markets are among their largest markets, defective Suntek products were likely also sold in New York, and the defective products were shipped from or through New York. Pl.'s Opp. at 13; Kim Decl. ¶¶ 21-25. Plaintiff's allegations are plainly insufficient to make a *prima face* case that the present action qualifies as exceptional under *Daimler*. The allegations show, at most, that Eastman had substantial and continuous contacts with New York by making sales here and transporting Suntek through its ports, *not* that such contacts rendered it "essentially at home" in New York. Plaintiff also fails to allege that Eastman's contacts with New York are so overwhelmingly vast as compared to its contacts with any other state or country. Rather, Plaintiff acknowledges that Eastman has employees worldwide and has customers in more than 100 countries, and that New York is "one of" the largest consumer and commercial markets for Suntek. Compl. at ¶ 3; Kim Decl. ¶ 23. "A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762 n.20. Accordingly, the Court cannot find that Plaintiff has made a *prima facie* showing that Eastman is essentially at home in New York, and thus, subject to general jurisdiction in this forum. *See Lopez v. Shopify, Inc.*, No. 16 Civ. 9761 (VEC) (AJP), 2017 WL 2229868, at *7 (S.D.N.Y. May 23, 2017) (holding that even though defendant has, *inter alia*, "multiple customers in New York" and an office in New York, there is no general jurisdiction under *Daimler*.)*; see also SPV OSUS Ltd.,* 114 F. Supp. 3d at 168 (holding that a foreign corporation is not subject to general jurisdiction in New York even though it has offices in New York, conducts substantial business in New York, has a registered agent in New York,

and otherwise engages in a "substantial, continuous, and systematic course of business" in New York).

### 2. Specific Jurisdiction

It is unclear from Plaintiff's papers whether it seeks to allege that the Court has specific jurisdiction over the Named Defendants. However, to the extent that Plaintiff's arguments may be construed as invoking specific jurisdiction, such arguments would be unavailing. CPLR § 302 provides that a court may exercise personal jurisdiction over a foreign entity that "transacts any business within the state or contracts anywhere to supply goods or services in the state." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Id.* (citation omitted). The "exercise of specific jurisdiction depends on in-state activity that '*gave rise to the episode-in-suit*.'" *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016). If the harm was not suffered in the forum, and all the conduct giving rise to the nonresidents' claims occurred elsewhere, the forum does not have specific jurisdiction over the defendants. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1782.

Plaintiff does not dispute that the products were manufactured in Virginia, or that they were sold in Missouri. The only contact the allegedly defective products had with New York were when they were shipped through New York. Accordingly, the Court finds that there is also no specific jurisdiction over the Named Defendants.

* * *

In sum, the Court finds that it does not have personal jurisdiction over the Named

Defendants, and grants dismissal of the case.[7]

## B. Transfer of Venue

The Named Defendants move in the alternative to transfer venue. As the Court finds that there is no personal jurisdiction over Defendants, it does not reach the question of whether venue is appropriate in this action.

## IV. CONCLUSION

For the aforementioned reasons, the Named Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 15, and close the case.

It is SO ORDERED.

Dated: October 18, 2017
New York, New York

                                                          Edgardo Ramos, U.S.D.J.

---

[7] Plaintiff asks the Court to certify an order for interlocutory appeal of its decision to dismiss the case for lack of personal jurisdiction, but only provides conclusory arguments. In any event, because the case is being closed, Plaintiff can appeal directly.